In the Matter of the Application of JAMES J. WHITE, Respondent, for a Mandamus Order against C. A. HARRELL, as City Manager of the City of Binghamton, and Others, Appellants.

Third Department, July 1, 1932.

*William L. Lewis, Corporation Counsel,* for the appellants.

*Herbert H. Ray,* for the respondent.

HILL, J. The city manager and fiscal officers of the city of Binghamton appeal from a peremptory mandamus order requiring the manager to reinstate and transfer the petitioner to the position of assistant engineer, sewer construction, at a salary of $2,500 a year, and the fiscal officers to pay him back salary from January 15, 1932, to the date of reinstatement. The petitioner was clerk to the superintendent of the water bureau until January 15, 1932, when that position was abolished.

It is stated in the petition and admitted in the answer " that there is set up in the 1932 budget of the City of Binghamton * * * the position of assistant engineer sewer construction in the Bureau of Engineering, Department of Public Works, at an annual salary of $2,500, which said position is now and was at the time of the discharge of your petitioner vacant and unoccupied."

The answer states that, for reasons of economy, no person is to be appointed as assistant engineer of sewer construction.

Under subdivision 1 of section 22 of the Civil Service Law (as amd. by Laws of 1930, chap. 214), the petitioner, a veteran, should have been transferred to any vacant position which he was fitted to fill that existed at the time the office which he occupied was abolished. (*Matter of Powers* v. *Dahl*, 219 N. Y. 578.)

The Special Term construed the statement, " That there is set up in the 1932 budget   *   *   *   the position of assistant engineer, sewer construction," as meaning that a vacant position under that title existed, which it was the duty of the city manager, under general and local statutes, to fill.   I am unable to adopt that construction.   The city of Binghamton has adopted the modified and simplified form of city government known as Plan C.   (Laws of 1914, chap. 444.)   In conducting the city government, the provisions of that chapter supersede all laws inconsistent therewith. (Laws of 1914, chap. 444, § 23.)   The provisions of the Second Class Cities Law not inconsistent still apply.   The statute as to Plan C states: " Such city officers and employees as the council shall determine are necessary for the proper administration of the city shall be appointed by the city manager."   (§ 92.)   This language makes plain the legislative intent.   It continues the distinction between legislative and executive duties.   The council is the legislative and appropriating body; the city manager is the executive and administrative head.   An orderly administration of public affairs is best accomplished by an observance of this fundamental distinction.   The council being selected by popular vote involving political activity, the thought was that it might be induced to create unnecessary offices and positions if there was opportunity to fill them with political favorites.   No such inducement would exist if the positions created were to be filled by a non-political appointing power.   The city manager, employed by the council, is not permitted finally to determine when the need for an employee exists, but may recommend to the council.   (§ 91.)

A " budget," be it National, State or city, is an estimate as to the probable expenditures to be incurred during the ensuing year, and of revenues hoped for with which to pay.   The adoption by the council of the budget containing an item which makes available money to pay the salary of an official is not a determination that such an official is " necessary for the proper administration of the city."   The budget is tentative.   By economies, estimated expenditures may be diminished, and if diminished, the burden of taxation is lightened.   The city, by making funds available, is under no greater obligation to expend that money, if the service is unneces-

sary, than a private individual is to purchase articles or employ help because he has money available for the purpose.

The budget adopted by the council of the city of Binghamton was an estimate of its revenues from indirect sources, and of the amount thought necessary " to provide for the expenses of conducting the business of the city in each board, department and office thereof." (Second Class Cities Law, § 75, as amd. by Laws of 1918, chap. 54.) The amount to be raised by taxation is the difference between the estimated indirect revenues and expenditures. (Second Class Cities Law, §§ 76, 77.) These sections apply under Plan C, except that the manager is substituted for the " board of estimate and apportionment." It is his duty to " prepare and submit to the council a tentative budget for the next fiscal year." (Laws of 1914, chap. 444, § 91.) The adoption of the budget containing an estimate for sewer department expenses, including an estimate for an assistant engineer, did not create that position, and did not indicate that the council had determined that such an employee was necessary for the proper administration of the business of the city, but only made available funds to pay the salary, should such expenditure be found necessary. When and if the council determines that there is such a need, it will be the duty of the city manager to appoint.

A peremptory mandamus order may be granted only when an official has failed to do a specific act which it was his duty to perform. Had the council determined that an assistant engineer in the department of sewer construction was necessary, it would have been the duty of the city manager to appoint, having regard to civil service laws and the necessity of transferring those entitled to preference. I find no uncontroverted allegation in the petition indicating a failure by the city manager in this regard. It contains a general allegation that vacancies which petitioner was fitted to fill existed at the time he was dropped from the service, and to which, under the Civil Service Law, he was entitled to be appointed. This is denied in the answering affidavits. An alternative order of mandamus would be proper to determine the question of fact so raised.

The peremptory order of mandamus should be reversed, with costs. The motion for a peremptory order of mandamus should be denied. An alternative order of mandamus should be granted to determine the questions of fact, with costs to abide the event.

All concur; McNAMEE, J., not voting.

Order modified so as to grant the petition to the extent of directing an alternative order of mandamus, with costs to abide the event. Questions of fact to be determined as indicated in the opinion.