[Civ. No. 39038. Second Dist., Div. Two. May 18, 1972.]

HOWARD A. JARVIS, Plaintiff and Appellant, v.
MARK BLOODGOOD, as Auditor-Controller, etc., Defendant and
Respondent.

## COUNSEL

Howard A. Jarvis, in pro. per., for Plaintiff and Appellant.

John D. Maharg, County Counsel, and Joel R. Bennett, Assistant County Counsel, for Defendant and Respondent.

## OPINION

**ROTH, P. J.**—In a budget adopted by the Board of Supervisors of Los Angeles County (Board) for the fiscal year July 1, 1970 to June 30, 1971, Board, after public hearings (Gov. Code, §§ 29080-29082) on the budget, excluded an appropriation of $100,000 requested for the purpose of presenting opera for the fall of 1970 which had been recommended by the county's music and performing arts commission and the county's chief administrative officer. The appropriation and the recommendation had been protested by appellant Jarvis. The record does not establish that the protest was the reason for its exclusion.

On July 21, 1970, Board reversed itself and ". . . instructed . . . necessary budget adjustments . . ." to provide the requested amount and made the appropriation.

On July 28, 1970, Board had a regular meeting and by resolution formally adopted in its minutes made the adjustment by transferring $100,-000 from a "Capital Project . . . Compton County Building . . . Land Acquisition" (Capital Fund) to the "Music and Performing Arts . . . etc." (Music Arts Fund) for the stated purpose of restoring ". . . funds for Music Center Opera Association which were deleted in the final budget changes. . . ."[1]

On August 4, 1970, Board approved a resolution which directed the execution of a contract by the county and Music Center Opera Association[2] obligating the association to present or procure the presentation of a fall 1970 grand opera season in the Dorothy Chandler Pavilion of the Los Angeles County Music Center for a consideration of $100,000 to be paid by county.

Jarvis, a taxpayer, appellant at bench, filed an action pursuant to section 526a of the Code of Civil Procedure to enjoin respondent Mark Bloodgood (Auditor-Controller of Los Angeles County), respondent herein, from

---

[1]At a formal meeting of the Board held on August 4, 1970 (infra) Board rescinded its action of July 21. However, the resolution of July 28th remained intact. The July 21 action made a fund transfer and apparently in error authorized a contract between county and Los Angeles Opera Company instead of Music Center Opera Association. There was a suggestion, too, that Board's action on July 28, 1970 (infra) making the appropriation transfer was in some way dependent upon a letter of the county's chief administrative officer, written July 23, 1970, which appellant charges would not have been written except for Board's inadvertent action on July 21.

[2]Music Center Opera Association was and is a California nonprofit corporation duly organized under California nonprofit corporation laws and was operated by board of directors as required by law.

paying the appropriation. The action contests the validity of the appropriation on three grounds:

1. It is not a proper public purpose and it is not in the public interest;

2. The appropriation was made in a procedurally defective manner. It was therefore contrary to Government Code section 29120 and in violation of article II, section 18 of the California Constitution;

3. There was no consideration for the appropriation and it was therefore a gift of public funds. (Art. XIII, § 25 of the California Constitution.)[3]

## There Is a Public Purpose

■ The Legislature has declared that public money expended for opera is a public purpose.

Government Code section 25562 reads: "In counties having a population of 1,000,000, the board of supervisors may provide, by contract with any person, firm, or corporation, operas, symphonies, band concerts, and historical or commemorative pageants or plays within the county. A charge may be made for attendance at such performances. Such contract shall provide that the management and control of such performances shall be under the supervision of the board of supervisors or shall provide specifically for those matters which cannot legally be delegated by the board of supervisors. Such contract may also provide for the reimbursement of the county, insofar as possible out of any net profits derived therefrom by such person, firm or corporation."

Such a declaration in the absence of a showing of manifest abuse is valid. (See *State* ex rel. *McClure* v. *Hagerman,* 155 Ohio St. 320 [44 Ohio Ops. 309, 98 N.E.2d 835, 838].)

Similar public purpose appropriations have been sustained by our courts. (*County of Los Angeles* v. *Nesvig,* 231 Cal.App.2d 603 [41 Cal.Rptr. 918]; *County of Los Angeles* v. *Hollinger,* 200 Cal.App.2d 877 [19 Cal. Rptr. 648].)

## Appropriation Transfer Procedure Was Valid

■ Article 4, chapter 1, division 3, title 3 of the Government Code (§ § 29080-29093) encompasses the adoption of a final budget by the board of supervisors. Government Code sections 29080, 29081, 29082

---

[3]A demurrer to the fourth amended complaint of Jarvis was sustained without leave to amend. He appeals from the order of dismissal thereafter entered pursuant to Code of Civil Procedure, section 581, subdivision 3.

and 29088 specifically mention the taxpayer hearing aspect of budget adoption.

Appropriation transfers and revisions *within* the final budget as adopted are authorized by Government Code sections 29120 and 29125. Section 29120 reads as follows: "Except as otherwise provided by law, the board and every other county or special district official and person shall be limited in the making of expenditures or the incurring of liabilities to the amount of the appropriations allowed by the budget or as thereafter revised by addition, cancellation or transfer."

Section 29125: "Transfers and revisions may be made with respect to the appropriations as specified in the resolution of adoption of the budget, except with respect to transfers from the appropriations for contingencies, by an action formally adopted by the board at a regular or special meeting and entered in its minutes. The board may designate a county official to approve transfers and revisions within an appropriation."

Nothing in Government Code sections 29080-29093 states or even implies that, after the Board has specifically rejected for inclusion in the final budget an appropriation for a particular purpose, upon taxpayer protest, the Board has lost its statutory power, during the fiscal year, to provide for that purpose, if it can raise the money by valid appropriation transfer pursuant to Government Code section 29125.

The transfer at bench was made as herein stated from "Capital Fund" to "Music Arts Fund." It did not affect "appropriation for contingencies."

The meaning and scope of a budget resolution is discussed by the Attorney General in his opinion dated November 27, 1950 to the District Attorney of Santa Cruz County (Op. No. 90-129, 16 Ops.Cal.Atty.Gen. 176, at p. 179) as follows: "Until the fund is irrevocably committed, the fact that it is carried on the county books under a particular name indicative of a hope or plan for future expenditure, is but a matter of administrative or bookkeeping convenience. Such a fund is available for the general purposes of the county. Govt. Code, sec. 25252; *Higgins* v. *City of San Diego,* 131 Cal. 294, 302 (1901); *Newton* v. *Brodie,* 107 Cal.App. 512, 520 (1930)."

The budget estimates proposed requirements. It is not a final determination of the merits of any proposed item or project. Government Code, section 29120 limits expenditures to ". . . the amount of the appropriations allowed . . . ."

The law is clear that the *inclusion* of an item in the budget does not

bind the Board to proceed with the contemplated transaction: (*Appalachian Electric Power Co.* v. *City of Huntington,* 115 W.Va. 588 [177 S.E. 431]; *White* v. *Harrell,* 236 App.Div. 206 [259 N.Y.S. 1].) No authority has been cited which binds Board to an item originally excluded. Logic dictates and the statute provides that although the proper items may have been originally excluded, they may be restored by the Board if it can find the money within the budget or transfer it from some other budget item (except contingencies) that has not been irrevocably committed.

### THERE WAS CONSIDERATION FOR BOARD'S APPROPRIATION

■ The Board validly contracted with Music Center Association, an independent corporate entity to pay it $100,000 to provide opera in the Music Center, operated by the county (*County of Los Angeles* v. *Nesvig, supra,* 231 Cal.App.2d 603) for the fall season of 1970. Music Center Opera Association, in order to fulfill its contract with Board, made a contract between itself and City Center Opera Company of New York. Board paid $100,000 to Music Center Opera Association for promise, a usual and recognized type of valid consideration. Appellant, however, argues in his brief "Probably the 'Agreement' was prepared with Gov. Code 25562 in mind, which section allows a board of supervisors to provide 'by contract with any person, firm or corporation, operas . . . within the County.

"Unfortunately, (or fortunately) the *purported 'contract' failed to make the company which was to present the operas a party to the contract.* The New York Corporation never agreed with the Board to perform any operas at all. And no consideration of any type passed to the Board. In short, it was not a legal contract as contemplated by Gov. Code 25562. . . ." (Italics in original.)

Appellant assumes that the language of section 25562 of the Government Code, to wit: "Such contract shall provide that the management and control of such performances shall be under the supervision of the board . . ." means the personnel comprising the Music Center Opera Association with which entity Board made its direct contract. We do not agree. The statute (25562) does not specifically prescribe the means which Board must adopt to make an opera season a *fait accompli.* It is reasonable to assume that Board in executing a contract has available to it, to accomplish the purpose of a statute, all valid, logical, reasonable and realistic methods used by individuals or private corporations in business transactions to accomplish the purpose of a contract. The thrust of the statute is that the Board may provide operas by contract. That was done. Since the statute in question does not specifically prescribe the means to accomplish

the result, those means calculated by prudent men to accomplish a business purpose may be adopted unless specifically proscribed by law. (*Harris v. Gibbins,* 114 Cal. 418, 421 [46 P. 292]; *City of Santa Monica* v. *Grubb,* 245 Cal.App.2d 718, 726 [54 Cal.Rptr. 210]; *County of Los Angeles* v. *Nesvig, supra,* 231 Cal.App.2d at pp. 616, 617; *Ravettino* v. *City of San Diego,* 70 Cal.App.2d 37, 47 [160 P.2d 52].)

The judgment is affirmed.

Fleming, J., and Compton, J., concurred.